Micheline ROBERSON, Gladys Dobelle, Martin Smith and Ned Buskirk, on their own behalf and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

Rudolph GIULIANI, as Mayor of the City of New York and Jason Turner, as Commissioner of the New York City Department of Social Services, Defendants–Appellees,

Brian J. WING, as Commissoner of the New York State Office of Temporary and Disability Assistance and Antonia Novello, as Commissioner of the New York State Department of Health, Defendants.

No. 02–7306.

United States Court of Appeals, Second Circuit.

Argued: Nov. 1, 2002.

Decided: Sept. 30, 2003.

---

Randal S. Jeffrey, New York Legal Assistance Group, New York, NY, (Yisroel Schulman, on the brief), for Plaintiffs–Appellants.

Caroline M. Brown, Corporation Counsel of the City of New York, New York, N.Y. (Michael A. Cardozo, Kristin M. Helmers and Helen P. Brown, on the brief), for Defendants–Appellees.

(Ellen M. Yacknin, Greater Upstate Law Project, Inc., Rochester, NY, for Amicus Curiae Brennan Center for Justice at New York University School of Law, Center for Battered Women's Legal Services at Sanctuary for Families, Greater Upstate Law Project, Northern Manhattan Improvement Corporation, Partnership for the Homeless, Public Interest Law Office of Rochester, Urban Justice Center, Welfare

Law Center, in support of Plaintiffs–Appellants.)

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiffs-appellants appeal from a February 2002 order of the United States District Court for the Southern District of New York (Cote, J.) denying their motion for attorney's fees in this action brought under 42 U.S.C. § 1983. The sole issue on appeal is whether plaintiffs may be considered a "prevailing party" under the applicable fee-shifting statute where they resolved their dispute with defendants through a private settlement agreement over which the district court retained enforcement jurisdiction. For reasons stated below, we hold that on the record before us the court's retention of jurisdiction carried sufficient judicial approval of the settlement agreement to support an award of attorney's fees. We therefore vacate the district court's order and remand for further proceedings.

## I.  Background

In October 1999, plaintiffs filed this § 1983 class action against (1) the Mayor of the City of New York and the Commissioner of the New York City Department of Social Services (collectively, "City defendants"), and (2) the Commissioner of the New York State Office of Temporary and Disability Assistance and the Commissioner of the New York State Department of Health (collectively, "State defendants"). In seven separate claims, plaintiffs challenged defendants' policies regarding the disposition of applications for food stamps, Medicaid and public assistance benefits based on recommendations of the Eligibility Verification Review ("EVR") Offices of the New York City Human Resources Administration ("HRA"). In June 2000, City defendants were granted summary judgment on plaintiffs' first claim, which alleged that the City's system for investigating joint applications for food stamps and public assistance violated federal law.

Subsequently, plaintiffs and City defendants entered into a settlement agreement (the "Agreement") that resolved plaintiffs' remaining six claims. In the Agreement, City defendants denied any liability arising out of plaintiffs' allegations but agreed to various changes in the way future benefits claims would be handled. The district court described City defendants' obligations under the Agreement as follows:

> Those undertakings were numerous and included that they would adopt a Medicaid determination management protocol which would require them to use an HRA computer program to track when Medicaid determinations are required to be made, give applicants for immediate cash grants additional written advice about certain EVR procedures, schedule EVR office interviews the day following receipt of certain applications, develop a log to track rescheduled EVR interviews, modify notices sent to schedule EVR home and office visits, computerize information reflecting a denial of benefits for a failure to provide truthful information, revise the notices sent to applicants when their requests for aid are denied, issue policy directives regarding a number of procedures and carry out those policies, tabulate bi-monthly the number of applications denied for failure to provide truthful information, adopt a method to insure that an applicant's food stamps will not be discontinued without the appropriate notice, modify their system for auditing compliance with the regulations concerning immediate cash grants and food stamps, make available to plaintiffs' counsel on a monthly basis a multitude of documents concerning the

EVR process, and appoint a contact to investigate promptly and report back to plaintiffs' counsel in response to issues that plaintiffs' counsel may raise about compliance with the terms of the Agreement. Most of these commitments were made for a period of twenty-four months following the discontinuance of the action.

In consideration for the above promises, plaintiffs agreed to dismiss all outstanding claims against City defendants and release them from all liability arising out of the allegations in the complaint. The Agreement also provided that it "shall not become effective if the Order of Discontinuance in the above-captioned action does not include a provision retaining jurisdiction over enforcement." In addition, the Agreement provided, "The issue of plaintiffs' entitlement to an award of attorneys' fees and costs and disbursements is reserved for later determination upon application to the Court . . . ."

In June 2001, plaintiffs submitted to the district court an order dismissing their claims against City defendants and requested the court to sign it.[1] A copy of the Agreement was provided to the court as part of the request. A week later, the plaintiffs and City defendants executed a Stipulation and Order of Discontinuance (the "dismissal Order"), which acknowledged that the parties had entered into a settlement agreement and dismissed plaintiffs' claims with prejudice as to City defendants.[2] The dismissal Order also provided, "This Court shall retain jurisdiction over the settlement agreement for enforcement purposes." The Agreement, however-

er, was not otherwise incorporated into the dismissal Order.

In September 2001, plaintiffs moved for $140,060.25 in attorney's fees and costs pursuant to 42 U.S.C. § 1988, which provides, "In any action or proceeding to enforce a provision of section[ ] . . . 1983 [of this title] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." City defendants opposed the motion on the grounds that (1) plaintiffs were not prevailing parties in the underlying action and (2) even if considered prevailing parties, plaintiffs' itemized account of fees included many non-compensable items. After thoroughly examining the Supreme Court's recent decision in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the district court denied plaintiffs' motion on the ground that plaintiffs were not prevailing parties under the standard announced by the Supreme Court in that case. This appeal followed.

## II. Discussion

■ As noted above, 42 U.S.C. § 1988 grants the district court explicit authority to award attorney's fees to a "prevailing party" in an action brought under § 1983. Where, as here, an appellant contends that the district court committed an error of law in ruling on an award of attorney's fees, we review that ruling de novo. *Baker v. Health Mgmt. Sys., Inc.*, 264 F.3d 144, 149 (2d Cir.2001). We have jurisdiction over this appeal under the "collateral order" doctrine articulated in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S.

---

1. Plaintiffs' claims against the State defendants were voluntarily withdrawn without prejudice in a separate Stipulation and Order of Dismissal. Those claims do not form any part of this appeal.

2. The claims were dismissed without providing notice to the putative class members or conducting a fairness hearing because the class was never certified.

541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See McGill v. Sec'y of Health & Hum. Servs.*, 712 F.2d 28, 29–30 (2d Cir.1983) (award of attorney's fees falls within the "collateral order" doctrine).

■ Generally, the Supreme Court has given a "generous formulation" to the term prevailing party, stating that plaintiffs may be entitled to attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks omitted). However, the Court recently took a somewhat more restrictive approach in its 2001 *Buckhannon* decision.[3]

A. The *Buckhannon* Opinion

In October 1997, the plaintiffs in *Buckhannon* brought suit against the State of West Virginia and twenty other defendants seeking declaratory and injunctive relief. The lawsuit claimed that a provision of the West Virginia code requiring all residents of residential board and care homes to be capable of "self-preservation" violated federal law.[4] After the parties began discovery, the West Virginia Legislature eliminated the self-preservation provision and the district court dismissed the case as moot. Thereafter, plaintiffs sought attorney's fees as a prevailing party on the ground that their lawsuit was the "catalyst" in forcing the defendants to change

the law. Although most circuit courts at the time recognized this "catalyst theory" as one way plaintiffs could become prevailing parties, the district court rejected plaintiffs' argument and the Fourth Circuit affirmed.

■ In *Buckhannon* the Supreme Court considered whether a plaintiff could be a prevailing party under what was termed the "catalyst theory." As described by the Court, the catalyst theory posits that "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 601, 121 S.Ct. 1835. Prior to *Buckhannon*, most Courts of Appeals to have considered the issue had held that the catalyst theory was an appropriate basis for an award of attorney's fees. The Supreme Court disagreed.

■ Relying on the definition in Black's Law Dictionary, the Supreme Court held that "a 'prevailing party' is one who has been awarded some relief by the court." Id. at 603, 121 S.Ct. 1835. It rejected the catalyst theory as a basis for an award of fees because it "allows an award where there is no judicially sanctioned change in the legal relationship of the parties" and "lacks the necessary judicial imprimatur." *Id.* at 605, 121 S.Ct. 1835. Essentially, in order to be considered a "prevailing party" after *Buckhannon*, a plaintiff must not only achieve some "material alteration of the legal relationship of the parties," but that change must also be judicially sanc-

---

3. *Buckhannon* concerned different fee-shifting provisions from those in this case. As we have earlier noted, however, "the standards used to interpret the term prevailing party under any given fee-shifting statute are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party." *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 123 (2d Cir.2002) (internal quotation marks omitted) (applying *Buckhannon* to § 1988).

4. More specifically, West Virginia law required that all residents of residential board and care homes be capable of moving themselves from "situations involving imminent danger, such as fire." See W.Va.Code §§ 16–5H–1, 16–5H–2 (1998) (repealed 2003), W.Va. Code of State Rules, tit. 87, ser. 1, § 14.07(1)(1995).

tioned. *See N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n,* 272 F.3d 154, 157 (2d Cir.2001).

The *Buckhannon* Court gave two examples of the types of relief that carry sufficient judicial imprimatur to form the basis for awarding attorney's fees to a plaintiff: judgments on the merits and settlement agreements that are enforced through court-ordered consent decrees. The Court noted that a consent decree is sufficient even without an admission of liability by the defendant because it constitutes a "court-ordered change in the legal relationship between the plaintiff and the defendant." 532 U.S. at 604, 121 S.Ct. 1835 (internal marks omitted). The Court also stated in a footnote, "Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." 532 U.S. at 604 n. 7, 121 S.Ct. 1835 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).

## B. District Court Decision

In applying *Buckhannon,* the district court here recognized that the Agreement was a material change in the legal relationship between the parties, but held that "[t]he Court's continuing jurisdiction in order to enforce the terms of the Agreement does not ... constitute a 'judicial sanctioning' of the alteration of their legal relationship such that the plaintiffs can be considered prevailing parties under the *Buckhannon* standard." The court came to this conclusion by analyzing the differences between "the judicial role in the creation and enforcement of a consent de-

cree ... [and] a court's role in enforcing a settlement agreement."

First, when the court issues a consent decree, it has an independent responsibility to exercise at least some minimal review of the terms of the Agreement. In contrast, the parties in the instant case resolved their dispute through a private agreement, and the district court stated that it "did not scrutinize the settlement's fairness or conduct any review of the terms of the Agreement before endorsing the stipulation dismissing the suit." Second, although a consent decree is essentially construed as a contract, courts have inherent power to enforce the terms of such a decree because they constitute court orders. However, the enforcement of a settlement agreement normally proceeds in state courts unless there is an independent basis for federal jurisdiction. Finally, consent decrees are directly enforceable through the contempt power of the court. Citing our decision in *Hester Industries, Inc. v. Tyson Foods, Inc.,* 160 F.3d 911, 916–17 (2d Cir.1998), the district court held that contempt was not an available option in enforcing a private settlement agreement. The court therefore held that its retention of jurisdiction over the enforcement of the Agreement was insufficient to support an award of attorney's fees.

## C. Analysis

■ Three cases in this Circuit have stated the holding in *Buckhannon* in terms that might arguably preclude recovery of attorney's fees unless a party obtains one of the two forms of relief identified by the Supreme Court as justifying prevailing party status, either a judgment on the merits or a court-ordered consent decree. *Union of Needletrades, Industrial & Textile Employees v. INS,* 336 F.3d 200, 204–05 (2d Cir.2003) ("The [*Buckhannon*]

Court further held that where a plaintiff realizes the objective of its lawsuit without a court-ordered consent decree or a judgment on the merits, a 'defendant's voluntary change in conduct ... lacks the ... judicial *imprimatur'* necessary to render the plaintiff a prevailing party."); *J.C.,* 278 F.3d at 123 ("The [*Buckhannon*] decision held that, to be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree."); *Fed'n of Taxi Drivers,* 272 F.3d at 158 ("In order to be a prevailing party, the [*Buckhannon*] Court reasoned, a party must secure a judgment on the merits or a settlement agreement that is enforced through a consent decree."). However, *Needletrades, J.C.* and *Federation of Taxi Drivers* were all catalyst theory cases. As such, there was no settlement agreement to be enforced in any of those cases. We therefore did not fully consider the different types of relief that might satisfy the *Buckhannon* court's general statement of its holding—that there must be a judicially sanctioned change in the legal relationship of the parties.[5]

■ More significantly, it seems clear from even the majority opinion in *Buckhannon* that the Court intended its statements about judgments on the merits and court-ordered consent decrees as merely "examples" of the type of judicial action that could convey prevailing party status.[6] 532 U.S. at 605, 121 S.Ct. 1835 ("We think, however, the 'catalyst theory' falls on the other side of the line *from these examples.*" (emphasis added)). We therefore join the majority of courts to have considered the issue since *Buckhannon* in concluding that judicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur. *See Am. Disability Ass'n, Inc. v. Chmielarz,* 289 F.3d 1315, 1319 (11th Cir.2002) ("[T]he district court interpreted *Buckhannon* to stand for the proposition that a plaintiff could be a 'prevailing party' *only* if it achieved one of those two results. That reading of *Buckhannon,* however, is overly narrow."); *Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134–35 n. 5 (9th Cir.2002) ("While dictum in *Buckhannon* suggests that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, we are not bound by that dictum ...."); *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy,* 288 F.3d 452, 458–59 (D.C.Cir. 2002) (holding that parties' stipulation and order of dismissal did not "meaningfully alter the legal relationship of the parties," but implying that had there been such a change, *Buckhannon* would not preclude an award of fees); *Smyth v. Rivero,* 282 F.3d 268, 281 (4th Cir.2002) ("We doubt that the Supreme Court's guidance in *Buckhannon* was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly."); *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 165 (3d Cir.2002)

---

**5.** It is worth noting that in *Needletrades* we explicitly recognized that the plaintiff never "requested that the district court order a consent decree or endorse, or *retain jurisdiction over, a settlement agreement.*" 336 F.3d at 206 (emphasis added). Further, in *Federation of Taxi Drivers,* we held that the "essence of being a 'prevailing party' is achieving a 'material alteration of the legal relationship of the

parties' that is judicially sanctioned." 272 F.3d at 158 (quoting *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835).

**6.** The Supreme Court split five to four in the *Buckhannon* decision. The four dissenters would have accepted even the catalyst theory as a basis for an award of attorney's fees.

("We do not agree with the District Court's conclusion that the parties' *settlement* was an inappropriate basis for an award of attorney's fees."); but see *Christina A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir.2003) ("*Buckhannon*, as indicated, makes it clear that a party prevails only if it receives either an enforceable judgment on the merits or a consent decree.").[7]

Although the district court here took the correct general approach, its analysis did not fully appreciate the implications of its retention of jurisdiction over enforcement of the Agreement.[8] The Supreme Court's decision in *Kokkonen v. Guardian Life Insurance of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), cited with approval in *Buckhannon*, 532 U.S. at 604 n. 7, 121 S.Ct. 1835, is instructive in this regard. In *Kokkonen*, the Supreme Court considered whether a federal district court had the "inherent power" to enforce a settlement agreement that resulted in the dismissal of a case pending before it. The Court stressed the limited jurisdiction of the federal courts stating, "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Id. at 377, 114 S.Ct. 1673 (citations omitted). It held that the district court lacked ancillary jurisdiction to issue an order enforcing the private settlement agreement, but also noted,

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement *had been made part of the order of dismissal*—either by separate provision (*such as a provision "retaining jurisdiction" over the settlement agreement*) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

Id. at 381, 114 S.Ct. 1673 (emphasis added).

Viewed in the light of *Kokkonen*, the district court's retention of jurisdiction in this case is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees. First, despite the district court's statements that it had not specifically reviewed or approved the terms of the settlement agreement, the district court retained jurisdiction to enforce the Agreement. Under *Kokkonen*, when the district court retained jurisdiction, it necessarily made compliance with the terms of the agreement a part of its order so that "a breach of the agreement would be a violation of the order." 511 U.S. at 381, 114 S.Ct. 1673. Further, because the court has the general responsibility to ensure that its orders are fair and lawful, it retains some responsibility over the terms of a settlement agreement as the parties' obligation to comply with the agreement was made a part of its order. We agree with the Fourth Circuit that:

---

**7.** The Eighth Circuit appears to be the only circuit to squarely adopt such a narrow reading of *Buckhannon*, and it did so over a vigorous and persuasive dissent by Judge Melloy. See *Christina A.*, 315 F.3d at 996 (Melloy, J. dissenting) ("The Court in *Buckhannon* did not limit the availability of prevailing party status to only those cases resolved through a consent decree or final judgment on the merits. Rather, the Court set forth criteria to guide the analysis of whether there is a judicially sanctioned, material change in the legal relationship of the parties.").

**8.** Because the district court in this case explicitly retained jurisdiction over enforcement of the Agreement, we need not decide whether a settlement agreement standing alone would justify an award of attorney's fees.

A court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur, and the continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of the agreement.

*Smyth*, 282 F.3d at 282. Thus, when the district court retained jurisdiction according to the procedures approved in *Kokkonen* it gave judicial sanction to a change in the legal relationship of the parties, regardless of the actual scrutiny applied.

Second, while the district court was correct that courts have inherent jurisdiction to enforce consent decrees, that jurisdiction is no different from the jurisdictional basis in this case. Consent decrees are enforceable in federal court because they are orders of the court; the Agreement is enforceable in federal court because a violation of the Agreement is a violation of the court's dismissal Order. Both are, in the terms used by the *Buckhannon* Court, "court-ordered change[s] in the legal relationship between the plaintiff and the defendant." 532 U.S. at 604, 121 S.Ct. 1835. Third, even if the district court was correct that our holding in *Hester* precludes a court from using its contempt power in the first instance to enforce a private settlement agreement over which it has retained jurisdiction, we do not think this is significant enough to deprive plaintiffs of prevailing party status.[9] In the case of both consent decrees and private settlement agreements over which a district court re-

tains enforcement jurisdiction, the district court has the authority to force compliance with the terms agreed upon by the parties. In the latter instance, the court at most would need to take an extra step by first ordering specific performance and then, if a party does not comply, finding that party in contempt. We doubt that the definition of "prevailing party" should turn on such a difference.

Our decision that the Agreement received sufficient judicial sanction to justify considering plaintiffs prevailing parties is strengthened by the clause it contains conditioning its effectiveness on the district court's retention of jurisdiction. The district court's dismissal Order in this case did not, as City defendants assert, simply preserve a federal forum in which the parties could adjudicate disputes. It *effectuated* the obligations of the parties under the Agreement because until the district court signed the dismissal Order retaining jurisdiction, the Agreement was not yet in effect. In a very literal sense, it was the court's order that created the change in the legal relationship between plaintiffs and City defendants.

■ Finally, City defendants argue that plaintiffs cannot be considered prevailing parties because judicial enforcement of the settlement agreement will not concern the merits of the underlying lawsuit. Rather, should a dispute over the Agreement arise, the court would simply apply state contract law to reach a resolution. However, as the district court noted, consent decrees too are essentially construed as contracts.

---

9. We also note that our holding in *Hester* that the district court could not enforce through its contempt power a settlement agreement that resulted in the dismissal of a pending lawsuit is arguably distinguishable from this case. In *Hester* we discussed the Supreme Court's decision in *Kokkonen* but concluded that the district court had not clearly retained jurisdiction over the agreement. 160 F.3d at

917 n. 2. We did not offer an opinion on how an explicit retention of jurisdiction would have changed the outcome of the case, if at all. It is therefore an open question in this circuit whether a district court could enforce an agreement through its contempt power in circumstances like those facing us in this appeal.

*EEOC v. New York Times Co.*, 196 F.3d 72, 78 (2d Cir.1999) ("Although consent decrees are judicial orders, they are also agreements between parties that should be construed basically as contracts." (internal quotation marks omitted)). Yet consent decrees clearly provide sufficient basis for an award of attorney's fees. *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835.

### III. Conclusion

For reasons stated above, we hold that the district court's retention of jurisdiction over the Agreement in this case provides sufficient judicial sanction to convey prevailing party status on plaintiffs. Because the district court erroneously concluded that plaintiffs were not prevailing parties, it did not consider the parties' other arguments regarding what amount of plaintiffs' fee request is fairly compensable. We therefore remand the case for the district court to consider those and any other remaining issues.