# United States Court of Appeals for the Federal Circuit

04-5069


RICE SERVICES, LTD.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.


Keith L. Baker, Barton, Baker, McMahon, Hildebrant & Tolle, LLP, of McLean, Virginia, argued for plaintiff-appellee.  With him on the brief was William T. Welch.

Richard P. Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant.  With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel was Paul W. Knoth, Attorney, Office of the General Counsel, United States Department of the Navy, of Washington, DC.

Appealed from:  United States Court of Federal Claims

Senior Judge James F. Merow

# United States Court of Appeals for the Federal Circuit

04-5069

RICE SERVICES, LTD.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

DECIDED:  April 27, 2005

Before SCHALL, DYK, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> SCHALL.  Concurring opinion filed by <u>Circuit Judge</u> DYK.

SCHALL, <u>Circuit Judge</u>.

This is an appeal of a judgment awarding attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1]  The case stems from a bid-protest action brought by Rice Services, Ltd. ("Rice") against the Department of the Navy ("Navy") challenging the award of a contract for dining services.  Rice filed the bid-protest action in the Court of Federal Claims on May 9, 2002, asking for, among other things, a reevaluation of the bids pursuant to the terms of the solicitation.  The parties filed cross-motions for summary judgment on the administrative record.  In addition, the

---

[1]    Unless otherwise indicated, references are to the 2000 version of the United States Code.

government filed a motion to dismiss the case for mootness due to the Navy's voluntary and unilateral decision to reevaluate the bids. The Court of Federal Claims granted the government's motion to dismiss and consequently denied the two pending motions for judgment on the administrative record. Rice Servs., Ltd. v. United States, No. 02-468 C (Fed. Cl. Sept. 26, 2002) ("Dismissal Order").

Subsequently, having received the relief requested in its complaint, Rice filed an application for attorney's fees under the EAJA. The Court of Federal Claims granted Rice's application and awarded Rice $31,709.38 in attorney's fees. Rice Servs., Ltd. v. United States, No. 02-468 C (Fed. Cl. July 29, 2003) ("EAJA Order"). After the court denied the government's motion for reconsideration of the award, Rice Servs., Ltd. v. United States, 59 Fed. Cl. 619 (2004) ("Reconsideration"), the government appealed. The specific issue on appeal is whether the Court of Federal Claims erred in finding Rice a "prevailing party" under the EAJA. Because we find the court did err, we reverse.

BACKGROUND

I.

This case arises out of a procurement by the Navy for wardroom dining services at the U.S. Naval Academy in Annapolis, Maryland. Dismissal Order, slip op. at 1. The Navy awarded the dining services contract to EC Management Services of Maryland, LLC ("EC") in December of 2001. Id. The term of the contract was from January 1, 2002, through September 30, 2002, but under the contract, the Navy could award option years upon sixty days prior notice. Id. On December 28, 2001, Rice filed an agency-

level protest with the Navy contesting the award to EC. Id. The Navy denied Rice's protest on January 29, 2002.

On May 9, 2002, Rice filed this action in the Court of Federal Claims. Rice requested the following relief: (1) a declaration that the award to EC was unlawful; (2) an injunction ordering a new award pursuant to the terms of the solicitation; (3) an order enjoining extension of the contract beyond its base period; and (4) an order enjoining any new award to EC. (Compl. ¶ 1.) The administrative record was filed in the Court of Federal Claims on June 10, 2002, and the parties cross-moved for summary judgment on it shortly thereafter. Dismissal Order, slip op. at 2. In addition, the government filed a motion to dismiss the lawsuit on the ground that the case was moot due to the Navy's unilateral and voluntary decision to conduct a new contract solicitation. Id.

On July 18, 2002, as promised in the government's motion to dismiss, the Navy issued notices to each of the six original offerors, informing them that the Navy had decided to open discussions regarding the solicitation and asking each offeror if it was interested in participating. Id. All six offerors indicated they were interested in the proposal. Id. The Navy and offerors subsequently established a schedule for discussions, submission of new offers, oral presentations, and a reevaluation. Id. The schedule stated that a new award would be made by November 20, 2002. Id. In view of the new solicitation, the Navy stated that it would not exercise the option under the current contract with EC.[2] Id.

---

[2] The Navy did, however, reserve the right to exercise the contract's continuity of service clause in order to obtain necessary services pending commencement of the new award in November. Dismissal Order, slip op. at 2.

On September 26, 2002, the Court of Federal Claims granted the government's motion to dismiss and denied all other pending motions. Id. slip op. at 3. The court found that the case had become "essentially moot" because

> [t]he relief requested by [Rice] has, substantially, been voluntarily afforded by the Navy. The original offerors, including [Rice] are voluntarily participating in the new submissions. The contract term awarded to [EC] expires on September 30, 2002. No option year will be awarded. New best and final offers for the wardroom dining service at issue will be obtained and a new award decision will be made by the Navy.

Id. slip op. at 2.[3] The court concluded:

> In this circumstance, . . . further action by the Court is not required or justified . . . and it is **ORDERED** that:
>
> (1) The remedial action described and promised in defendant's submissions shall be undertaken;
>
> (2) Accordingly, all outstanding motions are, otherwise, **DENIED**, without prejudice to any reassertion of the arguments therein which may be made in any subsequent protest action addressed to the remedial action underway;
>
> (3) Plaintiff's complaint shall be **DISMISSED**, without prejudice to the assertion of any new protest action addressed to the remedial action in progress.

Id. slip op. at 3 (emphases in original).

---

[3] A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). The Supreme Court has stated a two-part test for determining whether a case has been rendered moot. A case is rendered moot if (1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur;" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1975) (citations omitted).

II.

On December 17, 2002, Rice filed an application for attorney's fees under the EAJA. EAJA Order, slip op. at 2. The EAJA is a fee-shifting statute, which, under appropriate circumstances, allows a party who prevails in litigation against the government to recover attorney's fees and litigation costs. 28 U.S.C. § 2412. The statute states, in relevant part, that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Id. § 2412(d)(1)(A).

The government opposed the fee application on the ground that Rice was not a "prevailing party" under the Supreme Court's decision in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001), and this court's decision in Brickwood Contractors, Inc. v. United States, 288 F.3d 1371 (Fed. Cir. 2002). EAJA Order, slip op. at 2. The government argued that Rice did not qualify as a prevailing party under Buckhannon because the remedial action taken by the Navy was not the result of a court order but, rather, the result of a unilateral and voluntary decision by the Navy. Id. In response, Rice argued that it was a prevailing party because the Dismissal Order of September 26, 2002, "affirmatively ordered the Navy to act" in carrying-out its promised remedial action. Id.

The Court of Federal Claims granted Rice's application and awarded Rice $31,709.38 in attorney's fees. Id. slip op. at 2-3. The court reasoned that the facts of this case were equivalent to those of Former Employees of Motorola Ceramic Products

v. United States, 336 F.3d 1360 (Fed. Cir. 2003), where this court held that a court order remanding a case to an agency constitutes "success on the merits" when the court did not retain jurisdiction on remand. EAJA Order, slip op. at 2 ("The circumstances presented in this matter are equivalent to the situation where the parties consent to a remand order for agency corrective action and where the court does not retain jurisdiction while the further agency action is undertaken.") Therefore, the court held, Rice was a prevailing party and entitled to the claimed attorney's fees.

The government subsequently filed a motion for reconsideration of the attorney's fee award. The government again argued that Rice did not "prevail" in its lawsuit because the trial court only dismissed the claim after the Navy had undertaken voluntary remedial action to reopen the solicitation. Reconsideration, 59 Fed. Cl. at 620. Therefore, according to the government, it was not a court order but the Navy's voluntary actions that gave Rice its requested relief. The government also argued that this court's decision in Brickwood, 288 F.3d at 1380, held that under Buckhannon the only types of court action that confer prevailing party status are enforceable judgments on the merits and court-ordered consent decrees, neither of which were present in this case. Reconsideration, 59 Fed. Cl. at 621.

The Court of Federal Claims denied the motion for reconsideration on January 13, 2004. The court recognized that Buckhannon rejected the "catalyst theory" for fee awards based on a voluntary change in a defendant's conduct. Id. Rather, in order to be a "prevailing party" after Buckhannon, the court stated, one must "receive at least some relief on the merits," which "alters the legal relationship of the parties." Id. (quoting Buckhannon, 532 U.S. at 603). Contrary to the government's contention,

however, the court held that Federal Circuit precedent did not limit "prevailing party" status under Buckhannon to merit-based decisions or court-ordered consent decrees. Id. The court indicated that the key question after Buckhannon is whether there was a court order carrying sufficient judicial imprimatur to materially alter the legal relationship of the parties. See id. at 622.

In this case, the Court of Federal Claims held that the Dismissal Order "not only impressed defendant's curative efforts with the imprimatur of this court, but also altered the legal relationship between the parties." Id. This was because the "Order requiring defendant to comply with its promised action created independent rights and obligations." Id. at 623. Furthermore, the court found that Rice did obtain "some relief on the merits" from the Dismissal Order. This was because Rice's complaint asked the court to order a new evaluation and to enjoin the Navy from exercising the option under the award to EC, and this was the relief Rice actually received from the Dismissal Order. Id. The court also reiterated that "the [dismissal] action taken was equivalent to a remand to the Navy for re-solicitation of the procurement," which the court viewed as "success on the merits" under this court's decision in Former Employees of Motorola. Id. at 624.

The government timely appealed the Court of Federal Claims' decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I.

Although this court gives deference to a trial court's decision to award attorney's fees and expenses under the EAJA, no deference is given to a trial court's legal

interpretations of the EAJA. Former Employees of Motorola, 336 F.3d at 1363; Brickwood, 288 F.3d at 1376. The question of whether a party qualifies as a "prevailing party" under the EAJA is a question of law. Former Employees of Motorola, 336 F.3d at 1363. We therefore review de novo the decision of the Court of Federal Claims in this case.

On appeal, the government argues that Rice is not a prevailing party because the reevaluation of the bids was the result of the Navy's voluntary and unilateral decision to take remedial action and not the result of a court-ordered change in the legal relationship of the parties. Moreover, the government argues that the Supreme Court's decision in Buckhannon and this court's decision in Brickwood limit "prevailing party" status to parties who have obtained judicial relief on the merits or a court-ordered consent decree, neither of which, the government contends, were obtained in this case. First, the government argues that Rice did not achieve "success on the merits" because the court only dismissed the case in view of the Navy's voluntary remedial action. The government argues that the order in paragraph one of the Dismissal Order did not have any legal effect because the case was moot and the court consequently lacked jurisdiction to enter the order. The government further argues that, even if the case was not moot, the order did not require the Navy to do anything it was not already doing. Second, the government argues that there was not a court-ordered consent decree because the remedial action was taken unilaterally and was therefore not the result of an agreement or settlement between the parties.

The government also argues that the Court of Federal Claims erred in relying on Former Employees of Motorola. The government contends that this is because in

Former Employees of Motorola the trial court specifically remanded the case to an agency, whereas in this case the trial court simply dismissed the case. In addition, the government argues that unlike Former Employees of Motorola, where the remand decision itself constituted success on the merits, the Dismissal Order did not reach the merits of the case. The government asserts that this distinction makes the case like Brickwood, not Former Employees of Motorola.

In response, Rice first argues that, under Buckhannon, "prevailing party" is not limited to parties who obtained a merit-based judgment or consent decree, but includes any party who obtained a court order materially changing the legal relationship of the parties. Rice argues that the Court of Federal Claims' decision should be affirmed because, unlike the dismissal order in Brickwood, the Dismissal Order of September 26, 2002, meets the test for prevailing party status. That is, according to Rice, the Dismissal Order materially changed the legal relationship of the parties by specifically ordering that "the remedial action described and promised in defendant's submissions shall be undertaken." Rice contends that this differentiates this case from Brickwood, because in Brickwood the trial judge did not ever issue an order. Rather, in that case the government sought dismissal after the trial judge made adverse comments at a hearing for a temporary restraining order. In addition, Rice states that the judge's comments in Brickwood were made early in the case before the judge reached the merits. In this case, by contrast, Rice argues, the administrative record was much more developed and the court's order was therefore on the merits. Rice further argues that the Dismissal Order was fully enforceable because the government had not completed its promised remedial action.

Rice lastly argues that the Court of Federal Claims' decision is also consistent with this court's decision in Former Employees of Motorola. Rice states that Former Employees of Motorola held that "[w]hen there is a remand to the agency which remand grants relief on the merits sought by the plaintiff, and the trial court does not retain jurisdiction, the securing of the remand order is itself success on the merits." Rice contends that the Court of Federal Claims' Dismissal Order meets this standard because (1) the order granted Rice its requested relief by "convert[ing] the Government's plan to take remedial action into a legally enforceable mandate;" and (2) the Court of Federal Claims did not retain jurisdiction over the case.

## II.

## A.

In Buckhannon, the Supreme Court addressed the meaning of "prevailing party" as used in the Fair Housing Amendments Act of 1998 ("FHAA"), 42 U.S.C. § 3601 et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.[4] 532 U.S. at 601. The case involved resolving a split among the circuits as to whether a party could recover attorney's fees as a "prevailing party" based on the "catalyst theory" of recovery. Id. at 602. The "catalyst theory" allows a plaintiff to recover attorney's fees as a "prevailing party" if the plaintiff "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id.

---

[4] The FHHA provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). The ADA similarly states that "the court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." Id. § 12205.

at 601. The Supreme Court ultimately rejected this theory as a basis for recovery of attorney's fees under the fee-shifting provisions of the FHAA and ADA. Id. at 610.

The plaintiff in Buckhannon was an operator of assisted living homes who failed an inspection by a West Virginia fire marshal because some of the plaintiff's residents were not capable of "self-preservation," defined by the West Virginia Code to mean residents capable of removing themselves "from situations involving imminent danger, such as fire." Id. at 600 (citation omitted). The plaintiff, on behalf of itself and other similarly situated parties, brought suit in federal district court against the state of West Virginia, two of the state's agencies, and various individuals. Id. at 600-01. The complaint sought injunctive relief and a declaration that the "self-preservation" requirement violated provisions of the FHAA and ADA. Id. at 601. Before the district court made a decision in the case, the West Virginia Legislature enacted two statutes eliminating the "self-preservation" requirement. Id. Thereafter, the defendants filed a motion to dismiss the case, which the district court granted. The court found that the new legislation had eliminated the allegedly offensive provisions of the West Virginia code. Id. The plaintiffs subsequently filed an application for attorney's fees under the FHAA and ADA, arguing entitlement to fees under the "catalyst theory." The district court and the Fourth Circuit rejected the "catalyst theory" as a basis for fees and denied plaintiffs' application. Id. at 602.

In affirming the Fourth Circuit, the Supreme Court rejected the "catalyst theory" for fee awards. The Court first noted that under the "American Rule" there is "'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" Id. (quoting Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994)). Such explicit

statutory authority, the Court explained, is found in numerous federal statutes allowing an award of attorney's fees to a "prevailing party." Id. at 602-03 (listing various statutes). However, the Court stated that a party cannot be said to "prevail" unless it "'receive[d] at least some relief on the merits of [its] claim.'" Id. at 603-04 (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)). Furthermore, the Court indicated that "relief on the merits" at least required that the party obtain a court order materially changing the legal relationship of the parties. See id. at 604-05. The Court specifically held that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." Id. at 604 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)). Accordingly, the Court held that the "catalyst theory" could not serve as a basis for a fee award because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." Id. at 605.

B.

This court expressly extended Buckhannon to the EAJA in Brickwood, 288 F.3d at 1377-79. The case arose from a bid-protest action filed against the Department of the Navy in the Court of Federal Claims on June 15, 1999. Id. at 1373. The plaintiff's complaint sought an injunction and an order directing the Navy to award the contract at issue to the plaintiff. Id. At a hearing held on June 21, 1999, in connection with the plaintiff's request for a temporary restraining order ("TRO"), the court made several comments that the Navy considered adverse to its position. Id. at 1373-74. As a result, on July 16, 1999, the Navy filed a motion to dismiss the case, stating that "[a]fter further

consideration of both the circumstances surrounding the solicitation and the governing FAR provisions, and in light of the Court's comments at the TRO hearing, the Navy has cancelled the solicitation and plans to re-solicit using a new [Invitation for Bids]." Id. at 1374. The Court of Federal Claims granted the motion to dismiss and, subsequently, granted the plaintiff's application for attorney's fees. Id. at 1374-75.

In reversing the trial court's award of attorney's fees, we stated: "In our view, the Supreme Court in Buckhannon unambiguously rejected the 'catalyst theory' except in instances where there is an enforceable judgment on the merits or a court-ordered consent decree, both of which create a material alteration in the legal relationship of the parties." Id. at 1380. We further held that "the cited comments [from the TRO hearing] are clearly not sufficient to establish a judicial imprimatur and they do not constitute a 'court-ordered change in the legal relationship' of the parties as Buckhannon requires." Id.

This court addressed the meaning of "prevailing party" again in Former Employees of Motorola, 336 F.3d at 1363. The plaintiffs in that case filed a suit in the Court of International Trade alleging that they were improperly denied Worker Adjustment Assistance benefits by the Department of Labor. Id. at 1362. The plaintiffs requested that either the court certify them for benefits or remand the case to the Department of Labor for reconsideration. Id. The Department of Labor did not oppose the request for remand but, rather, specifically requested remand for reconsideration. Id. In light of the government's position, the court ordered "that the defendant's consent motion is granted and the case is remanded to the Department of Labor for reconsideration." Id. The Department subsequently conducted a reevaluation and

awarded plaintiffs their requested benefits. Shortly thereafter, the Court of International Trade dismissed the case by consent of both parties. Id. at 1363. The plaintiffs then filed an application for attorney's fees under the EAJA, which the court denied based on the Supreme Court's holding in Buckhannon. Id.

On appeal, we determined that the Court of International Trade erred in not finding the plaintiffs "prevailing parties" under the EAJA. We first stated that, in Buckhannon,

> [t]he [Supreme Court] explained that the term "prevailing party" does not "authorize[ ] federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." Rather, to be a prevailing party, one must "receive at least some relief on the merits," which "alter[s] . . . the legal relationship of the parties." Two examples of an alteration in the legal relationship between the parties were an enforceable judgment on the merits and a court-ordered consent decree.

Id. at 1364 (citations omitted). Second, we recognized that although a remand order generally does not confer prevailing party status, a remand to an administrative agency is different. Id. at 1364-65. That is because a "court proceeding is treated as a separate proceeding from the administrative proceeding." Id. at 1365. A remand order from a court proceeding may therefore "constitute the securing of relief on the merits." Id. We ultimately held that:

> When there is a remand to the agency which remand grants relief on the merits sought by the plaintiff, and the trial court does not retain jurisdiction, the securing of the remand order is itself success on the merits. When there is such a remand, and the trial court retains jurisdiction, the claimant is a prevailing party only if it succeeds before the agency.

Id. at 1366. We concluded that the Court of International Trade erred because "the Court of International Trade retained jurisdiction during the remand, and the remand order resulted in appellants' prevailing before the agency." Id. at 1367. We noted, however, that not all remand orders to an agency grant relief on the merits. Id. at 1366. In Vaughn v. Principi, 336 F.3d 1351, 1355-57 (Fed. Cir. 2003), for example, we held that neither the Secretary of Veterans Affairs' filing of a motion to remand to allow reconsideration in light of intervening legislation nor the Secretary's motion to remand in light of new evidence constituted relief on the merits.

C.

In sum, under our decisions in Brickwood, Former Employees of Motorola, and Vaughn, in order to demonstrate that it is a "prevailing party," an EAJA applicant must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those. This approach is consistent with the approach taken by the majority of the circuits that have considered the issue. See, e.g., Roberson v. Giuliani, 346 F.3d 75, 81 (2d Cir. 2003) ("We therefore join the majority of courts to have considered the issue since Buckhannon in concluding that judicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur." (footnote and citation omitted)); Truesdell v. Philadelphia Hous. Auth., 290 F.3d 159, 165 (3d Cir. 2002) (holding that an order characterized as a stipulated settlement conferred prevailing party status because it used mandatory language, bore the judge's signature, and was judicially enforceable); Smyth v. Rivero, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt

that the Supreme Court's guidance in <u>Buckhannon</u> was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly."); <u>T.D. v. Lagrange Sch. Dist. No. 102</u>, 349 F.3d 469, 478 (7th Cir. 2003) ("[S]ome settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree."); <u>Am. Disability Ass'n, Inc. v. Chmielarz</u>, 289 F.3d 1315, 1319 (11th Cir. 2002) ("[T]he essential test established by [<u>Buckhannon</u>] requires the plaintiff to achieve a 'judicially sanctioned change in the legal relationship of the parties.'" (citation omitted)); <u>Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy</u>, 288 F.3d 452, 458-59 (D.C. Cir. 2002) (implying that a stipulated order of dismissal could confer prevailing party status if it carried sufficient judicial imprimatur to materially change the legal relationship of the parties). <u>But see</u> <u>Christina A. v. Bloomberg</u>, 315 F.3d 990, 993 (8th Cir. 2003) ("<u>Buckhannon</u> . . . makes it clear that a party prevails only if it receives either an enforceable judgment on the merits or a consent decree.").

In <u>Roberson</u>, for example, the Second Circuit held that a private settlement agreement was sufficient to create prevailing party status because the district court's express retention of jurisdiction over the settlement provided sufficient "judicial imprimatur" to materially change the legal relationships of the parties. 346 F.3d at 81. Similarly, in <u>American Disability Association</u>, the Eleventh Circuit held that "[a] formal consent decree is unnecessary in these circumstances because the explicit retention of jurisdiction or the court's order specifically approving the terms of the settlement are, for these purposes, the functional equivalent of the entry of a consent decree." 289 F.3d at 1320.

III.

In <u>Buckhannon</u>, as discussed above, the Supreme Court rejected the "catalyst theory" as a basis for establishing "prevailing party" status because "[the 'catalyst theory'] allows an award where there is no judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 605. The Court explained that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur," <u>id.</u>, to materially change the legal relationship of the parties and, therefore, does not convey "prevailing party" status, <u>see</u> <u>id.</u> at 604-06. In other words, <u>Buckhannon</u> has essentially created a threshold that a plaintiff must meet in order to be deemed a "prevailing party." This threshold requires a plaintiff to have obtained a court order carrying sufficient "judicial imprimatur" to materially change the legal relationship of the parties. Enforceable judgments on the merits and court-ordered consent decrees clearly meet the threshold. <u>Id.</u> at 604. The threshold can also be met by other court action "equivalent" to a judgment on the merits or a court-ordered consent decree. However, court action is not "equivalent" unless it carries sufficient judicial imprimatur to materially change the legal relationship of the parties.

The precise question we must decide in this case is whether the Dismissal Order of the Court of Federal Claims conferred prevailing party status upon Rice.[5] The order

---

[5] As noted above, the order stated:
In this circumstance, . . . further action by the Court is not required or justified . . . and it is **ORDERED** that:
(1) The remedial action described and promised in defendant's submission shall be undertaken;
. . .

was not an enforceable judgment on the merits because the court did not reach the merits. Nor can we conclude that the order was a court-ordered consent decree, as there is no evidence the order embodies an agreement between the parties. See United States v. Armour & Co., 402 U.S. 673, 681-82 (1971) ("Consent decrees are entered into by parties to a case after careful negotiation has produced an agreement on their precise terms."); Black's Law Dictionary 441 (8th ed. 2004) ("A court decree that all parties agree to."). Therefore, in order for Rice to achieve "prevailing party" status from the Dismissal Order, we must conclude that the order was the equivalent of a judgment on the merits or a court-ordered consent decree. That is, we must conclude that the order carried sufficient judicial imprimatur to materially alter the legal relationship between Rice and the Navy. We conclude that the Dismissal Order did not have such a legal effect.

This is principally because, in our view, Buckhannon does not allow a court to take what would otherwise be a "catalyst theory" case and convert it—through language like that used in paragraph one of the Dismissal Order—into a case where the plaintiff is nevertheless accorded "prevailing party" status. Were we to hold otherwise, the Court's holding in Buckhannon could be easily circumvented by any order "directing" a party to take action.

A review of the proceedings below establishes that Rice's EAJA application is, in essence, a "catalyst theory" claim for attorney's fees. First, the facts before us show

---

(Cont'd. …)

> (3) Plaintiff's complaint shall be **DISMISSED**, without prejudice to the assertion of any new protest action addressed to the remedial action in progress.

Dismissal Order, slip op. at 3 (emphases in original).

that the Navy acted unilaterally in initiating a reevaluation of bids. Indeed, the record contains no evidence of any discussions between the parties prior to the Navy initiating the reevaluation. Second, the record also indicates the Navy acted voluntarily, i.e. the Navy undertook remedial action before any rulings by the Court of Federal Claims. Moreover, it appears that all of the offerors, including Rice, responded favorably to the Navy's proposed remedial action before any rulings were made by the Court of Federal Claims. Third, once the government informed the court of the remedial action underway, the court issued the September 26, 2002 order dismissing the case without reaching the merits. The court even stated that "[i]n view of the present status of this procurement, it is concluded that plaintiff's protest has become 'essentially moot.'" Dismissal Order, slip op. at 2 (emphasis added). That was because, the court said, "[t]he relief requested by plaintiff ha[d], substantially, been voluntarily afforded by the Navy[,]" and "[t]he original offerors, including plaintiff, [were] voluntarily participating in the new submissions." Id.

Under these circumstances, we cannot conclude that the order materially altered the legal relationship between Rice and the Navy. Most notably, the court found that Rice's requested relief had already been "substantially" and "voluntarily" afforded by the Navy. Thus, the court entered its order because the government had voluntarily abandoned its position. The court did not state that it was entering the order as a merits adjudication in the face of a continuing controversy. Therefore, even if the order changed the legal relationship of the parties,[6] the change was not material. In addition,

---

[6] The court stated that the case was "essentially moot." Obviously, if the case was moot then the Dismissal Order had no effect on the parties' legal relationship and did not confer upon Rice "prevailing party" status. N. Carolina v. Rice, 404 U.S.

the facts here present less of a case for attorney's fees than those in <u>Brickwood</u>, because in <u>Brickwood</u>, the government only took remedial action after the court made preliminary comments from the bench regarding its view on the merits, comments that were adverse to the government.  Here, by contrast, the court had given no indication as to its view on the merits of the case prior to the government seeking dismissal.  Nor is our holding in <u>Former Employees of Motorola</u> helpful to Rice.  That is because the Dismissal Order was not a remand to an agency for further consideration or action by the government based on a settlement agreement, but a dismissal in view of remedial action already implemented unilaterally and voluntarily by the Navy.

In sum, for the foregoing reasons, we conclude that this is really a "catalyst theory" case, despite the Dismissal Order directing the government to follow through on its promised remedial action.  Holding otherwise would expose a backdoor through which claimants could circumvent <u>Buckhannon</u> by obtaining attorney's fees for what are, in essence, "catalyst theory" cases.

## CONCLUSION

We hold that Rice is not a "prevailing party" under the EAJA.  The Court of Federal Claims consequently erred in awarding Rice attorney's fees.  The judgment of the court is therefore reversed.

## COSTS

Each party shall bear its own costs.

## <u>REVERSED</u>

---

(Cont'd. …)
244, 246 (1971) ("[I]t has frequently [been] repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

# United States Court of Appeals for the Federal Circuit

04-5069

RICE SERVICES, LTD.,

 Plaintiff-Appellee,

v.

UNITED STATES,

 Defendant-Appellant.

DYK, Circuit Judge, concurring.

I join the majority opinion, and write separately only to emphasize that the voluntary abandonment of challenged conduct will not always and automatically preclude the award of attorney's fees.  As Buckhannon itself recognized, there may be circumstances in which a continuing controversy will exist despite the claimed voluntary abandonment; the merits of the case will be decided; and the winning party will be entitled to prevailing party status.  Thus in Buckhannon, the Court stated:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. If a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees.

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 609 (2001) (internal citations omitted).

The majority here correctly concludes that this is not such a case.  There was no settlement agreement leading to the entry of an enforceable decree, and the Court of

Federal Claims entered an injunctive order without deciding the merits.  Under such circumstances, I agree that there is no entitlement to fees.