Rebecca RYAN d/b/a Flyaway Farm
and Kennels, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–1218 C.

United States Court of Federal Claims.

June 20, 2006.

Laura Nelson, Reddick, FL, for plaintiff. Marcia G. Madsen, David F. Dowd and William L. Olsen, Washington, DC, of counsel.

John S. Groat, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Christopher Cole, Department of the Air Force, Arlington, VA, and Beverley Hazelwood–Lewis, Small Business Administration, Washington, DC, of counsel.

*OPINION*

HEWITT, Judge.

Before the court are Defendant's Motion to Dismiss (Def.'s Mot.), Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl.'s Resp.), Plaintiff's Motion to Dismiss All Claims Except Plaintiff's Entitlement to Attorney Fees (Pl.'s Mot.), Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Response to Plaintiff's Motion to Dismiss (Def.'s Resp. and Reply), and Plaintiff's Reply to Defendant's Opposition to Motion to Dismiss All Claims Except Plaintiff's Entitlement to Attorneys' Fees (Pl.'s Reply). Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant moves to dismiss the claims in plaintiff's complaint because the present circumstances of the case have "render[ed] [plaintiff's] requests for judicial relief moot." Def's Mot. at 2. Plaintiff moves to dismiss all claims except plaintiff's "entitlement to costs and attorneys fees un-

der the Equal Access to Justice Act ('EAJA'), 28 U.S.C. § 2412 [2000]," Pl.'s Mot. at 1, and requests that the court "direct[ ] the plaintiff to file any application for attorneys fees within 30 days of the of the issuance of the entry of the Order [dismissing the case]," *id.* Plaintiff also requests that the court determine whether it *"has jurisdiction* to entertain [plaintiff's prospective] application [under EAJA]." Pl.'s Reply at 1.

## I. Background

On July 27, 2005, Charleston Air Force Base (Charleston AFB) issued a solicitation (No. FA4418–05–R–0011) for Bird Abatement Strike Hazard (BASH) services which were designated as a "competitive HUBZone [Historically Underutilized Business Zone] set-aside." *See* Complaint for Declaratory and Injunctive Relief and Statutory Damages (Compl.) ¶ 10. Both plaintiff, the incumbent BASH contractor, *id.* ¶ 1, and Birdstrike Control Program—Border Collie Rescue (BCP), submitted responses, *id.* ¶¶ 11–12. On September 23, 2005, the Air Force Contracting Officer at Charleston AFB issued a preaward notice naming BCP as the apparent awardee for the BASH contract.[1] *Id.* ¶ 17. On September 29, 2005, plaintiff filed a timely protest challenging BCP's alleged HUBZone status and its qualification as a small business under Small Business Administration (SBA) guidelines. *Id.* ¶ 18. The SBA ultimately ruled that BCP satisfied the SBA size requirements, *id.* ¶ 20, and that BCP was a "qualified HUBZone SBC [Small Business Concern]," *id.* ¶ 23.

Plaintiff filed a complaint with this court on November 21, 2005 alleging (1) that the SBA's decision that BCP qualifies as a HUBZone SBC was "arbitrary and capricious, lacks a rational basis, and is in violation of law," *id.* ¶ 30; (2) that the SBA's decision that BCP does not exceed applicable SBA size limitations was "arbitrary and capricious, lacks a rational basis, and is in violation of law," *id.* ¶ 32; and (3) that defendant's decision to award the BASH services contract to BCP was "arbitrary and capri-

cious, lacks a rational basis, and is in violation of law," *id.* ¶ 34. Plaintiff requested that the court "stay award of the contract [to BCP]," "extend [plaintiff's] current BASH contract pending the Court's resolution of this case," "determine that BCP is not a qualified small business concern" or a "qualified HUBZone SBC," "direct the Contracting Officer to award the contract to Ryan," "award Ryan damages [under] 28 U.S.C. § 1491(b) [2000]," and "provide any further relief as shall . . . comport with the interests of justice." Compl. at 13.

On December 2, 2005, defendant moved to remand the case to the SBA for the purpose of determining whether BCP was eligible for an award as a HUBZone SBC. Defendant's Motion to Remand at 1. Plaintiff did not object to that motion. Plaintiff's Response to Defendant's Motion to Remand at 1. On December 22, 2005, the court granted Defendant's Motion to Remand "to allow the SBA to consider and address all factual contentions raised by the plaintiff." Order of Dec. 22, 2005 at 1.

On February 8, 2006, while the case was on remand to the SBA, BCP voluntarily requested decertification from the HUBZone Program and removal of its name from the List of Qualified HUBZone SBCs. *See* Appendix to Defendant's Motion (Def.'s Mot.App.) 2 (Voluntary Decertification Agreement); *see also id.* at 3–4 (BCP's letter requesting decertification). Based on that request, the SBA decertified BCP as a qualified HUBZone SBC on February 15, 2006. *Id.* at 1. On March 3, 2006, the Contracting Officer notified BCP that, as a result of BCP's decertification, BCP's offer for Solicitation FA4418–05–R–0011 would no longer be considered for award. *Id.* at 5.

Based on the decertification of BCP and the Air Force's determination not to consider BCP for an award, defendant filed a motion to dismiss plaintiff's complaint for lack of jurisdiction based on mootness. Def.'s Mot. at 1–2. Plaintiff responded that the case was "not at all moot," Pl.'s Resp. at 3, and argued

---

1. BCP was to be awarded the contract "unless there was a basis for challenging BCP's HUBZone status." Compl. ¶ 17.

that the court should retain jurisdiction because "[t]he issues presented by [plaintiff's] Complaint remain unresolved," *id.* at 1. Plaintiff argued that she "ha[d] not obtained the contract to which she was entitled nor compensation (in the form of bid and proposal costs) for being deprived of a fair opportunity to compete." *Id.* It appears that plaintiff's principal concern was that the Air Force would "decide to cancel the current solicitation and issue a new one." *Id.* at 2. Plaintiff appears to have been concerned that, although BCP had been decertified as a HUBZone SBC and excluded from consideration for solicitation No. FA4418–05–R–0011, BCP could still win a contract under a new RFP if it were able to reself-certify as a HUBZone SBC and submit a bid. *Id.* at 2. Plaintiff also expressed concern that the Air Force "might ... reissue the solicitation as a full and open competition *without* any HUBZone set-aside" "due to a purported 'lack of competition,'" thereby allowing BCP to compete in an unrestricted competition and possibly win the contract. *Id.* at 3 (emphasis added).

Despite plaintiff's concerns, plaintiff was subsequently awarded the disputed BASH contract under solicitation No. FA4418–05–R–0011. Pl.'s Mot. at 1. Plaintiff then responded to defendant's motion to dismiss by asserting that there was one "remaining issue outstanding," that is, plaintiff's "entitlement to costs and attorneys fees under the Equal Access to Justice Act ('EAJA'), 28 U.S.C. § 2412." Pl.'s Mot. at 1. Defendant filed its response and reply on April 24, 2006, in which it states that, although defendant "understand[s] [plaintiff to have] the right to [file] an [EAJA] application, the question of her eligibility for fees is a matter to be determined based upon her application." Def.'s Resp. and Reply at 2. Plaintiff then filed its reply requesting "that the Court determine now (prior to the parties['] ... preparing and briefing an EAJA application) whether the Court *has jurisdiction* to entertain the [EAJA] application." Pl.'s Reply at 1.

## II.   Discussion

### A.   Justiciability

■ Under Article III of the United States Constitution, the power of the judiciary "extends only to cases or controversies." *Powell v. McCormack,* 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *see* U.S. Const. art. III. Although the United States Court of Federal Claims was established under Article I of the Constitution, the court "traditionally has applied the case or controversy requirement [of Article III] unless jurisdiction conferred by Congress demands otherwise." *Commonwealth Edison Co. v. United States,* 56 Fed.Cl. 652, 657 (2003) (quoting *Mass. Bay Transp. Auth. v. United States,* 21 Cl.Ct. 252, 257–58 (1990) *(Mass.Bay))* (alteration in *Commonwealth Edison).*

### 1.   Mootness

■ Based on the "case or controversy requirement," *id.,* the court lacks jurisdiction to consider the merits of a moot case, *see Powell,* 395 U.S. at 496 n. 7, 89 S.Ct. 1944. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 496, 89 S.Ct. 1944; *accord Rice Servs., Ltd. v. United States,* 405 F.3d 1017, 1019 n. 3 (Fed.Cir.2005); *Lion Raisins, Inc. v. United States,* 69 Fed.Cl. 32 (2005) (dismissing claims on ground of mootness in bid protest context).

Plaintiff and defendant agree that, in light of BCP's decertification as a HUBZone SBC, the Air Force's determination not to consider BCP for award of the Charleston AFB BASH Services contract, and the subsequent award of the contract to plaintiff, the substantive issues in the present case have been resolved. Pl.'s Mot. at 1 (stating that "the only remaining issue outstanding is [plaintiff's] entitlement to costs and attorneys fees under [EAJA]"); Def.'s Mot. at 2 (stating that plaintiff's "requests for judicial relief [are now] moot"); Def.'s Resp. and Reply at 2 (agreeing with plaintiff's motion to dismiss "except [as to its] entitle[ment] to submit an application for attorney fees and expenses"). Consequently, both parties have moved to dismiss the case. Pl.'s Mot. at 1; Def.'s Mot. at 1–2. Because the issues presented in plaintiff's complaint are no longer "'live,'"

*Powell,* 395 U.S. at 496, 89 S.Ct. 1944, the case is moot and must be DISMISSED for lack of jurisdiction. The court now turns to the issue of plaintiff's application for attorney's fees.

### 2. Ripeness

■ The ripeness requirement, also a component of justiciability, is "peculiarly a question of timing," *Blanchette v. Conn. Gen. Ins. Corp.,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The ripeness doctrine is designed to prevent courts from becoming entangled in abstract disagreements which may lead to premature decisions. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Maritrans Inc. v. United States,* 342 F.3d 1344, 1359 (Fed.Cir.2003). Article III of the Constitution "prohibits federal courts from issuing advisory opinions or deciding disputes that are not concrete and adverse." *Mass. Bay,* 21 Cl.Ct. at 257; *see* U.S. Const. art. III. In order to evaluate whether an issue is ripe for judicial review, the court must determine (1) "the fitness of the issue[ ] for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott,* 387 U.S. at 149, 87 S.Ct. 1507; *Commonwealth Edison,* 56 Fed.Cl. at 658.

■ In addition to moving to dismiss the substantive issues in the case, plaintiff requests that the court "determine now (prior to the parties['] going through the time and expense of preparing and briefing an EAJA application) whether the [c]ourt *has jurisdiction* to entertain the application." Pl.'s Reply at 1. EAJA requires that a party seeking an award of attorney's fees and other expenses, "within thirty days of final judgment in the action, *submit to the court an application* for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection." 28 U.S.C. § 2412(d)(1)(B) (emphasis added). Plaintiff has not filed an EAJA application. *See* Pl.'s Reply at 4. Because plaintiff's application is not before the court, plaintiff's claim is not fit for judicial review under the first prong of the ripeness test. *See* Pl.'s Reply at 4.

Under the second prong of the ripeness test, because plaintiff has not yet filed an EAJA application, neither party to the action will undergo substantial hardship if the court withholds consideration. Therefore, the court declines to decide whether it would have jurisdiction over plaintiff's prospective claim for attorney's fees in the absence of a formal EAJA application and DENIES plaintiff's request that the court retain jurisdiction over plaintiff's entitlement to attorney's fees under EAJA.

### B. Plaintiff's Request for Direction to File an EAJA Application

Plaintiff also requests that the court "direct[ ] plaintiff to file an EAJA application." Pl.'s Mot. at 2. EAJA requires no such formal direction from the court. *See* 28 U.S.C. § 2412(d)(1)(B). EAJA requires only that a party seeking an award of attorney's fees and other expenses, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection." 28 U.S.C. § 2412(d)(1)(B). Therefore, the court DENIES plaintiff's request to direct the filing of an application for attorney's fees under EAJA.

## III. CONCLUSION

For the foregoing reasons, plaintiff's complaint is deemed MOOT by the court, defendant's Motion to Dismiss is GRANTED, plaintiff's Motion to Dismiss is GRANTED–IN–PART and DENIED–IN–PART, and the Clerk of the Court shall ENTER JUDGMENT dismissing plaintiff's complaint.

IT IS SO ORDERED.