Rebecca RYAN d/b/a Flyaway Farm
and Kennels, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–1218 C.

United States Court of Federal Claims.

Feb. 9, 2007.

Laura Nelson, Reddick, FL, for plaintiff. Marcia G. Madsen, David F. Dowd and William L. Olsen, Washington, DC, of counsel.

John S. Groat, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Christopher Cole, Department of the Air Force, Arlington, VA, and Beverley Hazelwood–Lewis, Small Business Administration, Washington, DC, of counsel.

## OPINION

HEWITT, Judge.

Before the court is plaintiff's Motion for Attorney's Fees and Costs Pursuant to Equal Access to Justice Act (Motion) and Memorandum of Law in Support of Motion for Equal Access to Justice Act Fees and Costs (Pl.'s Mem. or Memorandum), filed on September 20, 2006; Defendant's Response to Plaintiff's Application for Fees and Costs and Appendix (Def.'s Resp. or Response), filed on November 2, 2006; Plaintiff's Reply to Defendant's Response to Plaintiff's Application for Fees and Costs (Pl.'s Reply), filed on November 28, 2006, and Defendant's Sur–Reply (Def.'s Sur–Reply), filed on January 4, 2007. Plaintiff seeks attorneys' fees and related nontaxable expenses pursuant to the Equal Access to Justice Act (EAJA), 28

U.S.C. § 2412, 5 U.S.C. § 504 (2000). Pl.'s Mem. 1.

At issue is whether plaintiff qualifies as a prevailing party pursuant to EAJA such that plaintiff may recover her attorneys' fees and whether the government was substantially justified in its position. Plaintiff argues that she was a prevailing party because, although Ryan did not win an outright judgment, she "succeed[ed] on [a] significant issue in litigation which achieves some of the benefit [it] sought in bringing suit." Pl.'s Mem. 4 (quotation omitted). Plaintiff also argues that the government was not substantially justified because, despite its "statutory obligation to determine whether [Birdstrike Control Program (BCP)] was a legitimate [Historically Underutilized Business Zone (HUBZone) Small Business Concern (SBC)]," it "failed to meet its obligation and denied Ryan's protest without conducting a reasonable investigation of Ryan's allegations." Id. at 7. Plaintiff argues that she deserves a higher rate than the standard for attorneys' fees because of the limited availability of qualified attorneys for her claim or, alternatively, because of the increase in cost of living. Id. at 9–10.

Defendant contends that plaintiff's Motion should be denied because plaintiff is not a prevailing party and because the government was substantially justified. According to defendant, a prevailing party obtains a judgment in its favor on the merits or an order by the court changing the legal relationship between the parties. Def.'s Resp. at 6. Defendant argues that a party is not prevailing when it "reache[s] the sought-after destination without obtaining any judicial relief," which is what defendant perceives to have occurred in this case. Id. (quoting *Buckhannon Bd. and Care Home Inc. v. W. Va. Dep't of Health and Human Res. (Buckhannon)*, 532 U.S. 598, 606, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). Defendant contends that the government's position was substantially justified because its only obligation in overseeing a protest of HUBZone eligibility was to "decide[ ] the matter upon the basis of the existing administrative record." Id. at 13. Alternatively, defendant asserts that plaintiff's claim to fees in excess of the statu-

tory cap does not meet her burden to establish that the kind of attorneys plaintiff argues were necessary actually "quali[f]y for such enhancement." Id. at 19–20.

For the following reasons, plaintiff's motion is DENIED.

## I. Background

On July 27, 2005, Charleston Air Force Base (Charleston AFB) issued a solicitation for Bird Abatement Strike Hazard (BASH) services which were designated as a "competitive HUBZone set-aside." See Complaint for Declaratory and Injunctive Relief and Statutory Damages, Nov. 21, 2005, (Compl.) 4. Plaintiff and BCP–Border Collie Rescue (BCR) submitted responses. Id. On September 23, 2005, the Air Force Contracting Officer at Charleston AFB issued a preaward notice naming BCP as the awardee for the BASH contract. Id. at 6. On September 29, 2005, plaintiff filed a timely protest challenging BCP's alleged HUBZone status and its qualification as a small business under Small Business Administration (SBA) guidelines. Id. The SBA determined that BCP was a qualified HUBZone SBC. Id. at 7.

Plaintiff filed a complaint with this court on November 21, 2005, alleging that the SBA's decisions that BCP qualified as a HUBZone SBC and that BCP did not exceed applicable SBA size limitations, and Charleston AFB's decision to award the BASH services contract to BCP were "arbitrary and capricious, lack[ed] a rational basis, and [were] in violation of the law." Id. at 1–2. Plaintiff prayed that the court "stay award of the contract [to BCP]," "extend [plaintiff's] current BASH contract pending the Court's resolution of this case," "determine that BCP is not a qualified [SBC]" or a "qualified HUBZone SBC," direct the Contracting Officer to award the contract to Ryan, "award Ryan damages [under] 28 U.S.C. § 1491(b) [2000]," and "provide any further relief as shall ... comport with the interests of justice." Id. at 13.

On December 2, 2005, defendant moved to remand the case to the SBA because "Ryan here contends that the SBA has not considered 'all relevant factors' in its determination that BCP is an eligible HUBZone SBC, and

remand is appropriate here." Defendant's Motion to Remand 1, 5. Plaintiff did not object to the remand motion. Plaintiff's Response to Defendant's Motion to Remand, Dec. 21, 2005. The court granted the unopposed motion "to remand this matter to the [SBA] for the purpose [of] determining whether the apparent eligible low bidder, [BCP], is eligible for an award as a [HUBZone SBC]" and "to allow the SBA to consider and address all factual contentions raised by plaintiff." Order, Dec. 22, 2005, 1.

On remand, the SBA conducted an investigation of BCP's HUBZone eligibility by conducting a site visit, and by requesting additional information from BCP and its officers. Pl.'s Mem. 2. On February 8, 2006, while the case was still on remand and before the SBA released any of its findings, BCP voluntarily requested decertification from the HUBZone Program and removal of its name from the List of Qualified HUBZone SBCs. Pl.'s Mem. 2; *Ryan v. United States,* 71 Fed.Cl. 740, 741 (2006). Based on this request, the SBA decertified BCP as a qualified HUBZone SBC and, shortly thereafter, the Contracting Officer notified BCP that, because of the decertification, BCP's offer would no longer be considered for the BASH contract. *Ryan,* 71 Fed.Cl. at 741. Plaintiff was subsequently awarded the BASH contract. *Id.* at 742.

On June 20, 2006, pursuant to the parties' various motions to dismiss and subsequent briefing, the court entered an opinion stating that because "the substantive issues in the present case have been resolved" and "[b]ecause the issues presented in plaintiff's complaint are no longer 'live,' the case is moot and must be DISMISSED for lack of jurisdiction." *Id.* at 742–43 (citation omitted). The court declined to rule on "whether it would have jurisdiction over plaintiff's prospective claim for attorney's fees in the absence of a formal EAJA application" and denied "plaintiff's request to direct the filing of an application for attorney's fees under EAJA" because "EAJA requires no such formal direction from the court." I at 743. Plaintiff subsequently filed the pending Motion.

## II. Discussion

### A. EAJA Must be Strictly Construed

"The EAJA is a waiver of sovereign immunity which must be strictly construed." *Levernier Constr., Inc. v. United States (Levernier),* 947 F.2d 497, 502 (Fed.Cir.1991); *see Fanning, Phillips and Molnar v. West,* 160 F.3d 717, 721 (Fed.Cir.1998). Courts do not have the discretion "to expand liability beyond that which was explicitly consented to by Congress" in order to "do equity." *Levernier,* 947 F.2d at 502 (quotation and citation omitted).

### B. Attorney's Fees Under EAJA

EAJA provides, in pertinent part, that

a court shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A); *see also* 5 U.S.C. § 504. Plaintiff correctly breaks down the requirements to recover attorney's fees under EAJA by stating that an applicant must:

(1) have been a prevailing party in a proceeding against the United States, 5 U.S.C. § 504(a)(1);

(2) if a corporation, have not had more than $7,000,000 in net worth and five hundred employees at the time the adversary adjudication was initiated, *id.* § 504(b)(1)(B);

(3) submit its application within thirty days of a final disposition in the adjudication, *id.* § 504(a)(2);

(4) in that application, (a) demonstrate that all eligibility requirements have been met and (b) state the amount sought and include an itemized statements of costs and attorney fees, *id.;* and

(5) allege that the position of the agency was not substantially justified, *id.* § 504(a)(1).

*See also* Pl.'s Mem. 3.

### 1. Plaintiff Meets Three of the Requirements for Receiving Attorney's Fees Under EAJA

Plaintiff claims that, as a corporation, it meets the size requirement because plaintiff's net worth did not exceed $7,000,000 and plaintiff did not have more than five hundred employees. Pl.'s Mem. 6 (citing Ex. A); 5 U.S.C. 504(b)(1)(B). The application is timely, plaintiff alleges, because it was filed within thirty days of the August 20, 2006, final judgment. *Id.;* 5 U.S.C. § 504(a)(2). Defendant does not dispute these assertions, Def.'s Resp. *passim,* and the court agrees that these requirements have been met. 5 U.S.C. § 504(a)(2); *see* 28 U.S.C. § 2412(d)(1)(B). The June 20, 2006, Opinion became a final judgment on August 20, 2006, when the time to appeal ran out, Fed. R.App. P. 4(a)(1)(B), and the September 20, 2006 Memorandum was filed within the 30 days of this "final disposition," 5 U.S.C. § 504(a)(2). *See also Melkonyan v. Sullivan (Melkonyan),* 501 U.S. 89, 90, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (discussing how "final judgment" pursuant EAJA refers to when the time of appeal has expired for all parties). Additionally, in her Memorandum, plaintiff meets the procedural requirement of including an itemized statement of attorney's fees and an explanation as to how the requirements have been met. Pl.'s Mem. *passim;* 5 U.S.C. § 504(a)(2).

### 2. Plaintiff is Not a Prevailing Party Pursuant EAJA

A former rule of law sometimes applied the "catalyst theory" in determining whether the plaintiff had prevailed in a lawsuit. Under this theory, "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon,* 532 U.S. at 601, 121 S.Ct. 1835; *Vaughn v. Principi,* 336 F.3d 1351, 1356 (Fed.Cir.2003); *Former Employees of Motorola Ceramic Prods. v. United States (Former Employees),* 336 F.3d 1360, 1364 (Fed.

Cir.2003). In other words, for a plaintiff to have prevailed, a court need not have acted as anything more than a setting for the parties to resolve the conflict themselves.

■ The catalyst theory was specifically rejected by the Supreme Court. *Buckhannon,* 532 U.S. at 610, 121 S.Ct. 1835. Plaintiff is correct in claiming that a party is "prevailing" when it "succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit," Pl.'s Mem. 4 (quotation omitted) (alteration in original), but she failed to address two of the now necessary additional requirements for EAJA recovery. For a party to be considered prevailing under EAJA, it must meet a three-part test under *Buckhannon:* 1) A prevailing plaintiff must accomplish at least some of "what the plaintiff sought to achieve by the lawsuit," 2) the proceedings must involve an "alteration in the legal relationship of the parties," and 3) these results must be effected by a "necessary judicial *imprimatur* on the change." 532 U.S. at 605, 121 S.Ct. 1835; *see* Def.'s Resp. 6. In *Buckhannon,* the plaintiff sued the state in the District Court for the Northern District of West Virginia seeking injunctive relief when an inspection revealed that an assisted living home had failed the state's self-preservation laws requiring that all residents be capable of removing themselves from situations of imminent danger. 532 U.S. at 600, 121 S.Ct. 1835. The case was dismissed as moot when the state legislature eliminated the self-preservation requirement. *See id.* at 600–01, 121 S.Ct. 1835. The Supreme Court held that plaintiffs were not entitled to attorneys' fees because, even though they obtained the relief they sought, they did not do so through a judicially-sanctioned action. *Id.* at 605, 121 S.Ct. 1835. While *Buckhannon* dealt only with provisions of the Fair Housing and Amendments Act of 1988 (FHAA), 42 U.S.C. § 3613(c)(2), and the American with Disabilities Act (ADA), 42 U.S.C. § 12205, the Court's analysis of the term "prevailing party" is directly applicable in EAJA cases. *Brickwood Contractors, Inc. v. United States (Brickwood),* 288 F.3d 1371, 1378 (Fed.Cir. 2002) ("Our examination of the text and the legislative history of the EAJA leads us to

conclude that there is no basis for distinguishing the term 'prevailing party' in the EAJA from other fee-shifting statutes."); *see* Def.'s Resp. 6.

Plaintiff satisfies the first two prongs of the *Buckhannon* test. First, as plaintiff explained, "Ryan's principal objectives were terminating the award of the contract to BCP and obtaining it for her firm." Pl.'s Mem. 4. After the initiation of litigation, "these objectives were realized." *Id.* Second, where plaintiff did not have a legally binding relationship with defendant at the initiation of her lawsuit, she eventually procured a contract for BASH services at Charleston AFB. *Id.* at 2. "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (1979). By definition, a contract alters the relationship of two parties such that they are bound by legally enforceable commitments to do certain things. Defendant correctly does not dispute these conclusions. *See* Def.'s Resp. *passim.*

The crux of the dispute lies in the third prong of the *Buckhannon* test: whether the legal change and the accomplishment of plaintiff's objectives bore the requisite judicial imprimatur. *Buckhannon* specifically identified enforceable judgments on the merits and court-ordered consent decrees as situations reflecting enough judicial action to support an award of attorney's fees. 532 U.S. at 604, 121 S.Ct. 1835 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The Federal Circuit explained that these two categories include "the equivalent of either of those." *Rice Servs. Ltd. v. United States* (Rice), 405 F.3d 1017, 1025 (Fed.Cir.2005); *see, e.g., Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (holding that an interlocutory ruling that reverses a dismissal for failure to state a claim "is not the stuff of which legal victories are made"); *Hanrahan v. Hampton,* 446 U.S. 754, 756, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (holding that a reversal of a directed verdict for defendant does not make plaintiff a prevailing party); *High-*

*way Equip. Co. v. FECO, Ltd.,* 469 F.3d 1027, 1035 (Fed.Cir.2006) (holding that dismissal of a case with prejudice embodies a judicial imprimatur sufficient to satisfy *Buckhannon); Advanced Sys. Tech., Inc., v. United States (Advanced Sys.),* 74 Fed.Cl. 171, 175 (2006) (holding that a "preliminary injunction [that] merely preserved the status quo *pendente lite* and did not materially alter the legal relationship of the parties" did not have sufficient judicial imprimatur to justify an EAJA award).

 As a general rule, remand orders do not constitute relief on the merits. *Sullivan v. Hudson,* 490 U.S. 877, 886–87, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989); *Former Employees,* 336 F.3d at 1364; *see* Def.'s Resp. 7. This is because a party's "remands, similar to a ruling that reverses a dismissal for failure to state a claim, provide only the opportunity for further adjudication." *Vaughn,* 336 F.3d at 1356 (holding that "a remand to an administrative agency to consider the effects of legislation enacted while the case was on appeal does not constitute securing relief on the merits ... [and] that a remand for consideration of new evidence discovered for the first time while the case was on appeal is not relief on the merits"). There are, however, exceptions to this trend, as noted by a case cited by plaintiff, Pl.'s Mem. 5–6:

> [W]here the plaintiff secures a remand requiring further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party (1) without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court, or (2) when successful in the remand proceedings where there has been a retention of jurisdiction.

*Former Employees,* 336 F.3d at 1366. In other words, if the court retains no jurisdiction upon remand, the remand must include some sort of relief on the merits—such as a judgment that the remand was based on agency error—for the plaintiff to be a prevailing party. *See id.; see also Vaughn,* 336 F.3d at 1357 (discussing how a "sentence four remand is consistent with the holdings of *Buckhannon* and *Brickwood* because the unique statutory language of sentence four

includes a judgment on the merits with any remand order"). If the court retains jurisdiction on a remand based on alleged agency error, an agency's decision on the merits will constitute judicial action and will be determinative when the court enters final judgment effectuating the decision. *See Hudson,* 490 U.S. at 887, 109 S.Ct. 2248; *Former Employees,* 336 F.3d at 1366; *Vaughn,* 336 F.3d at 1358 (discussing how "[t]he HHS Secretary must return to the district court after the post-remand proceedings to allow the district court to enter a final judgment" when the district court retains jurisdiction); Def.'s Resp. 7–8.

■ Contrary to inferences suggested by plaintiff, "agency imprimatur" is not equivalent to "judicial imprimatur" unless and until the court enters judgment ordering the agency's actions. *Vaughn,* 336 F.3d at 1358; *see* Pl.'s Reply 6. Of course, *Hudson* could be read to hold that all agency action on remand is attributable to court action because of its holding that "the proceedings on remand are an integral part of the 'civil action' for judicial review, and thus attorney's fees for representation on remand are available," 490 U.S. at 892, 109 S.Ct. 2248, and the dissent in that case does appear to take that view. *Id.* at 895–96, 109 S.Ct. 2248 (White, J., dissenting) ("First, the majority takes the position that a 'civil action' includes remand proceedings before the Social Security Administration...."). *Hudson* was almost immediately limited by *Sullivan v. Finkelstein,* which, upon considering *Hudson,* clarified that "[w]e did not say that proceedings on remand to an agency are 'part and parcel' of a civil action in federal district court for all purposes, and we decline to do so today." *Sullivan v. Finkelstein,* 496 U.S. 617, 630–31, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). *Hudson's* holding was further chipped away by later cases, which held that it is not "binding as to ... remands that are ordered ... without retention of jurisdiction, or that are ordered with retention of jurisdiction that is challenged." *Shalala v. Schaefer,* 509 U.S. 292, 300, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *see Melkonyan,* 501 U.S. at 97, 111 S.Ct.

2157 ("*Hudson* thus stands for the proposition that in those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level."). Other cases pointed out that *Hudson* was responding to the unique circumstances of Social Security cases, where the "degree of direct interaction between a federal court and an administrative agency [is] alien to traditional review of agency action under the Administrative Procedure Act," *Branstad v. Veneman,* 232 F.Supp.2d 945, 953 (N.D.Iowa 2002) (quoting *Hudson,* 490 U.S. at 885, 109 S.Ct. 2248), and where the administrative proceedings were non-adversarial, *Therrien v. Barnhart,* No. 03–176, 2004 WL 1529294, slip op. at 2 (D. Me. June 15, 2004), which is a situation distinguishable from this case. In any event, although it was never explicitly overruled, the court is of the view that what may have remained of *Hudson,* as applied to this case, ceased to be good law upon the decision in *Buckhannon. Buckhannon* imposed the rule that the legal change in plaintiff's favor must be marked by a "necessary judicial *imprimatur.*" 532 U.S. at 605, 121 S.Ct. 1835. The Supreme Court had, in previous cases, distinguished between the terms "action" [1] and "judicial." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (holding that "actions" may include "administrative proceedings" and not be limited to "judicial actions"). In *Buckhannon,* the Supreme Court explicitly identified the judiciary as the dispositive actor in EAJA awards. 532 U.S. at 605, 121 S.Ct. 1835.

Plaintiff does appear to recognize the authority of *Buckhannon* in this regard. *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835; *see* Pl.'s Reply 6 (citing *Universal Fid. LP v. United States,* 70 Fed.Cl. 310, 311–15 (2006) (deciding "whether [a] plaintiff ha[d] obtained a judgment on the merits, a court-ordered consent decree, or the equivalent of either" by analyzing the court's, not the

---

1. The term "civil action" was at issue in *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

agency's, actions)). The cases in the Federal Circuit are, of course, consistent. *Levernier,* 947 F.2d at 503 ("Because the EAJA as a waiver of sovereign immunity is to be strictly construed, 'civil action' should be given ... its ordinary (and most restrictive) meaning to include only judicial proceedings."). Even the merely persuasive authority that plaintiff cites does not support her position. *Lee Construction Co. v. Federal Reserve Bank of Richmond,* on which plaintiff relies, Pl.'s Reply 6, decided the issue as to whether the Federal Reserve Bank is an "agency" capable of conferring "agency action" subject to provisions of the Administrative Procedure Act, 5 U.S.C. § 702, rather than whether "agency action" is equivalent to "judicial action." *Lee Constr. Co. v. Fed. Reserve Bank of Richmond,* 558 F.Supp. 165, 172–73 (D.Md.1982). Indeed, in attempting to define "agency action," that court contemplated the opinion of Professor Davis, who defined "agency" as "a governmental authority, other *than a court* and other than a legislative body, which affects the rights of private parties through either adjudication or rulemaking." *Id.* at 173 (quoting 1 K. Davis, *Administrative Law Treatise* § 1.01, at 1 & n. 1 (1958)) (emphasis added). Although "agency investigators ... are often intertwined in practice with the adjudicative decisionmaker," Pl.'s Reply 6–7, the cooperation of the various branches of government is not—and plaintiff cites no authority to the contrary—a dispositive indicator that they are one and the same. Regardless of the practical reality for a party, who must follow the rule of law regardless of the source, administrative agencies and judicial courts are not interchangeable. *See Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835; *Levernier,* 947 F.2d at 503; *Universal Fidelity,* 70 Fed.Cl. at 311–15.

That a court action, such as a remand, may be voluntarily requested by both of the parties may be an indication of the catalyst theory. Def.'s Resp. 10; *see, e.g., Vaughn,* 336 F.3d at 1355–56 ("In Vaughn's case, the voluntary change in conduct was the [defendant's] filing of a motion to remand.... In Sumner's case, the voluntary change in conduct was the [defendant's] filing of a motion to remand.... Because [plaintiffs] achieved a desired result—remands to the [agency]—and the appeals brought about a voluntary change in the [defendant's] conduct, [plaintiffs'] EAJA applications for attorney fees are premised on the catalyst theory."); *Advanced Sys.,* 74 Fed.Cl. at 176–77 ("Because the remand in this action was based upon Defendant's voluntary consent to have OHA reconsider the size appeals, the 'catalyst' for the remand was Defendant's consent, not a Court determination.").

There is an alternative line of cases indicating that the fact that a court action, such as a remand, may be voluntarily requested by the parties, contrary to defendant's implications, Def.'s Resp. 10, is not necessarily determinative in this inquiry. *Melkonyan,* 501 U.S. at 102, 111 S.Ct. 2157 (holding that "Petitioner will be entitled to EAJA fees unless the Secretary's initial position was substantially justified" if the court did indeed remand the case and retain jurisdiction, despite the fact that the remand was pursuant to a joint motion); *Former Employees,* 336 F.3d at 1368 ("[A] consent remand is to be treated the same way as a contested remand."); *Highway Equip.,* 469 F.3d at 1033 (explaining that when the *Buckhannon* court rejected the catalyst theory, "the Court explained that the critical focus is not the defendant's voluntary change in conduct, but rather whether there is a 'judicially sanctioned change in the legal relationship of the parties.' The Court held that a defendant's voluntary change in conduct, even if it accomplishes what the plaintiff sought to achieve, lacks the necessary 'judicial imprimatur on the change'") (citation omitted). After all, consent decrees and their equivalents can confer prevailing party status when they favor the plaintiff. *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835; *Rice,* 405 F.3d at 1025; *Former Employees,* 336 F.3d at 1368. "A consent decree is '[a] judgment entered by consent of the parties whereby defendant agrees to stop alleged illegal activity without admitting guilt,' or a decree that is 'in effect an admission by [the parties] that the decree is a just determination of their rights upon the real facts of the case.'" *Vaughn,* 336 F.3d at 1356 (quoting *Black's Law Dictionary* 410–11 (6th ed.1991)). The voluntary

nature of consent decrees differs markedly from the voluntary conduct that is the cornerstone of the catalyst theory: In consent decrees and their equivalents, judicial action is necessary to implement the agreements reached by the parties. *See Highway Equip.*, 469 F.3d at 1034 ("The dispositive issue is thus whether the dismissal with prejudice had sufficient judicial imprimatur to constitute a 'judicially sanctioned change in the legal relationship of the parties.' ") (citation omitted). When parties act voluntarily pursuant the catalyst theory, a court's actions, if they exist, are incidental to plaintiff's achievement of its goals. *Id.* at 1034–35 (discussing how "the voluntary filing of the covenant in this case was designed to be judicially enforceable and was the basis for the court's order dismissing the claims with prejudice," making the court's decision "a disposition on the merits").

In this case, the remand order itself does not convey prevailing party status on plaintiff. *Hudson*, 490 U.S. at 886–87, 109 S.Ct. 2248; *Former Employees*, 336 F.3d at 1364. "[T]he United States voluntarily sought remand of the case to allow the SBA to conduct a program examination of BCP's HUBZone eligibility." Def.'s Resp. 10. Under the *Vaughn* line of cases, the voluntary nature of the remand alone is an indicator of the catalyst theory and would defeat the conferring of prevailing party status on plaintiff. *Vaughn*, 336 F.3d at 1355–56; *Advanced Sys.*, 74 Fed.Cl. at 176–77. Under the *Melkonyan* line of cases, the voluntary nature of the remand does not defeat the potential for prevailing party status. *Former Employees*, 336 F.3d at 1368; *see* Pl.'s Reply 3 ("[A]ll that matters for purpose of the 'prevailing party' analysis is that the court issued a remand requiring further agency proceedings ... and that, on remand, the agency was to focus on the merits of the fee applicant's claims.") (quotation omitted). However, the court retained jurisdiction during the remand proceedings, Def.'s Resp. 10, which means that the inquiry does not stop there; the court must look to the court's final judgment as determinative of whether plaintiff prevailed in the action. *Former Employees*, 336 F.3d at 1361.[2]

During the remand proceedings, BCP requested to be decertified as a HUBZone contractor and the SBA granted the request. Plaintiff was then awarded her sought-after contract. *See* Pl.'s Mem. 4; Def.'s Resp. 11; *Ryan*, 71 Fed.Cl. at 741–43. At no time did the SBA reveal the results of its investigation. Pl.'s Mem. 4. Defendant argues that

---

**2.** In this case, the court did not explicitly find agency error in its remand order. Defendant's Response to Plaintiff's Application for Fees and Costs and Appendix, Nov. 2, 2006, (Def.'s Resp. or Response) 11. Defendant moved for a remand because "Ryan ... contends that the SBA has not considered 'all relevant factors' in its determination that BCP is an eligible HUBZone SBC, and remand is appropriate here," Defendant's Motion to Remand, Dec. 2, 2005, 5, and the court granted this motion "[f]or the reasons stated therein," Order, Dec. 22, 2005. As defendant implies, Def.'s Resp. 10–11, most EAJA cases involving remands with continuing court jurisdiction based their remands on agency error. *See, e.g., Hudson*, 490 U.S. at 887, 109 S.Ct. 2248; *Former Employees of Motorola Ceramic Prods. v. United States (Former Employees)*, 336 F.3d 1360, 1361 (Fed.Cir.2003); *Vaughn v. Principi*, 336 F.3d 1351, 1358 (Fed.Cir.2003). However, contrary to defendant's assertion that "[u]pon this basis alone, Ryan does not qualify as a prevailing party," Def.'s Resp. 11, the finding of agency error in such a scenario is, in the court's view, incidental to the analysis. Regardless of such a merit-based initial judgment, a remand with continuing court jurisdiction provides the court with an opportunity to render a judgment on the merits, a court-ordered consent decree, or the equivalent of either of these when it enters final judgment at the conclusion of the remand proceedings. That future opportunity to convey prevailing party status is what, in the court's view, is the crux of the analysis and not the finding of agency error at the intermediate step of the remand. The incidental nature of the finding of agency error on remand is conveyed in the holding of one these cases, which fails to mention the finding of agency error. *See, e.g., Hudson*, 490 U.S. at 892, 109 S.Ct. 2248 ("We conclude that where a court orders a remand to the Secretary in a benefits litigation and retains continuing jurisdiction over the case ..., the proceedings on remand are an integral part of the 'civil action' for judicial review, and thus attorney's fees for representation on remand are available subject to the other limitations in the EAJA."). In contrast, the finding of agency error on remand when the court does not retain jurisdiction on remand is dispositive of the issue of prevailing party status because the remand is the final disposition of the court, i.e., its last opportunity to render a judgment on the merits. *See, e.g., Former Employees*, 336 F.3d at 1366; *Vaughn*, 336 F.3d at 1357.

"BCP's notice of withdrawal indicated that its decision was based on Mr. Slay's decision to leave the partnership, which caused a change in the number of BCP's employees." Def.'s Resp. 11. Plaintiff, however, asserts that "[i]f the SBA's investigation had confirmed that BCP was a legitimate HUBZone SBC or even found that BCP had a colorable claim to eligibility, then BCP's rush to decertify itself—and thereby lose the contract it had been awarded—would be incomprehensible and unreasonable." Pl.'s Mem. 4. The question thus becomes whether BCP's decertification was a result of court action or BCP action, i.e., whether the decision that resulted in the legal change sought after by plaintiff was the result of judicial imprimatur or the decision of one of the parties acting independently of judicial action.

The decertification was not a consent decree or a situation analogous to a consent decree. There was no agreement between the parties; rather, BCP unilaterally requested that it be decertified. See Def.'s Resp. 10–11. Nor did the court ever act on the request. Regardless of what the court could have done or would have done had BCP not "voluntarily requested decertification from the HUBZone Program and removal of its name from the List of Qualified HUBZone SBCs," Ryan, 71 Fed.Cl. at 741, the fact remains that what the court did was to decide that "[b]ecause the issues presented in plaintiff's complaint are no longer 'live,' the case is moot and must be DISMISSED for lack of jurisdiction." Id. at 742–43. BCP's decertification cannot be attributed to the court because that decertification was, as plaintiff admits, "the SBA's actions on remand," Pl.'s Reply 3, for which no judgment or court order was ever entered. Ryan, 71 Fed.Cl. at 742–43; see Former Employees, 336 F.3d at 1361; Vaughn, 336 F.3d at 1358; Levernier, 947 F.2d at 503.

Nor is such a dismissal on grounds of mootness a judgment on the merits. Plaintiff's arguments that mootness "does not vitiate Ryan's EAJA claims" are inapposite. Pl.'s Mem. 5. A "moot case" is "[a] matter in which a controversy no longer exists; a case that presents only an abstract question that does not arise from existing facts or rights." Black's Law Dictionary 1029 (8th ed.2004). It is true that "EAJA applications are always to be made after judgment has been entered," Pl.'s Mem. 5 (citing 28 U.S.C. § 2412(d)(1)(B)), and insofar as the substantive issues have been resolved, "the original disputes are always 'moot' by the time an EAJA application is filed," Pl.'s Mem. 5. However, a controversy becoming moot because a court has entered judgment after considering substantive issues and a controversy becoming moot because a court has dismissed the case as moot, without more action, are distinct situations: In the former, the case is moot because the court has taken action on the merits, as a case plaintiff cites shows.[3] Select Milk Producers, Inc. v. Johanns, 400 F.3d 939 (D.C.Cir.2005) (holding that plaintiffs are prevailing parties entitled to attorney's fees under EAJA even though their case was dismissed as moot after the court entered a preliminary injunction that, in the circumstances of the case, was a judicially-ordered alteration in the legal relationship of the parties). In this case, the matter is moot because the court had no merits before it to decide. Ryan, 71 Fed.Cl. at 742 ("Based on the 'case or controversy requirement,' the court lacks jurisdiction to consider the merits of a moot case.") (citation omitted) (emphasis added).

This case falls under the rubric of the catalyst theory. The facts of this case are closely analogous to those in Buckhannon.

---

3. The court does not consider cases predating Buckhannon Board and Care Home Inc., v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), on this issue because the catalyst theory that had not yet been rejected by the Supreme Court could arguably justify EAJA awards in situations where the court left no significant judicial imprimatur on the cases. See Memorandum of Law in Support of Motion for Equal Access to Justice Act Fees and Costs, Sep. 20, 2006, (Pl.'s Mem. or Memorandum) 5 (citing Montes v. Thornburgh, 919 F.2d 531 (9th Cir. 1990); Kinney v. Fed. Sec., Inc., 272 F.3d 924 (7th Cir.2001); Intrepid v. Pollock, 907 F.2d 1125 (Fed.Cir.1990)). The court also does not consider Lupiani v. Wal–Mart Stores, Inc., 435 F.3d 842 (8th Cir.2006), which states that a case may not be moot when the issues of damages and attorneys' fees are unaddressed, but does not discuss the status of such a case vis-a-vis a potential EAJA award.

In *Buckhannon*, the "nonjudicial alteration of actual circumstances," 532 U.S. at 606, 121 S.Ct. 1835 (quotation and citation omitted), was the passage of legislation eliminating the "self-preservation" requirement in housing. *Id.* at 601, 121 S.Ct. 1835. In this case, the "nonjudicial alteration of actual circumstances" is the decertification of BCP as a qualified HUBZone SBC. In *Buckhannon*, the legislation resulted in the plaintiffs being unable to continue their suit against the State of West Virginia on the grounds that the "self-preservation" requirement allegedly violated the FHAA and ADA. In this case, the decertification of BCP resulted in its ineligibility for the BASH contract, a contract that was subsequently awarded to plaintiff. In both cases, these nonjudicial changes resulted in motions from defendants to dismiss the cases as moot, which were granted. *Buckhannon*, 532 U.S. at 601, 121 S.Ct. 1835; *Ryan*, 71 Fed.Cl. at 742–43. Neither court ruled on the merits, sanctioned a consent decree, or acted in a manner equivalent to a judgment on the merits or court-ordered consent decree. *Buckhannon* 532 U.S. at 604, 121 S.Ct. 1835; *Rice*, 405 F.3d at 1025. Neither court played a more significant role than as a catalyst to the result. *Id.*

### 3. Whether the Government was Substantially Justified

The parties' definitions of "substantially justified" are in substantial agreement and appear fairly to reflect the terms of EAJA. EAJA states:

> An agency that conducts an adversary adjudication shall award, to a prevailing party ... fees ... unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

5 U.S.C. § 504(a)(1); *see* Pl.'s Mem. 6–7; Def.'s Resp. 13–19; Pl.'s Reply 7–10. After considering various definitions for "substantially justified," the Supreme Court held

that the phrase "has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute' ... or 'if reasonable people could differ as to [the appropriateness of the contested action].'" *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted). As the Federal Circuit summarized, "the position of the Government is substantially justified when it is justified to a degree which would satisfy a reasonable person." *White v. Nicholson*, 412 F.3d 1314, 1315 (Fed.Cir.2005) (citing *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541); *see* Def.'s Resp. 14. A court is to examine "not what the law now is, but what the Government was substantially justified in believing it to have been." *Pierce*, 487 U.S. at 561, 108 S.Ct. 2541. "The reasonableness of the government's litigation position is determined by the totality of the circumstances, and we eschew any single-factor approach." *Essex Electro Engineers, Inc. v. United States (Essex)*, 757 F.2d 247, 253 (Fed.Cir.1985); *see Doty v. United States*, 71 F.3d 384, 386 (Fed.Cir. 1995) (holding that a court must consider "the government's position throughout the dispute," including prelitigation conduct, litigation position, and agency action); Def.'s Resp. 14. Thus, agency action found to be irrational, arbitrary, and capricious does not automatically deprive the government of substantial justification for its position because "the merits of the agency decision constitute only one factor in evaluating the justification for the government's litigating position in court." *Essex*, 757 F.2d at 253 (Fed.Cir.1985); *see* Def.'s Resp. 14. "When a party has prevailed in litigation against the government, the government bears the burden of establishing that its position was substantially justified." *Doty*, 71 F.3d at 385; Pl.'s Mem. 6–7.

Because the court does not find that plaintiff has "prevailed in litigation against the government," *Doty*, 71 F.3d at 385, within the meaning of EAJA, the court does not reach the question of whether the government's position "was substantially justified," 28 U.S.C. § 2412(d)(1)(A); 5 U.S.C. § 504(a)(1).

III. Conclusion

For the foregoing reasons, plaintiff's application for attorneys' fees is DENIED.

IT IS SO ORDERED.